Dennis Stewart (SBN 99152)
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 595-3299
dstewart@gustafsongluek.com

*Attorneys for Plaintiff and the Proposed Class*

[additional counsel on signature block]

**UNITED STATES DISTRICT COURT**
**NORTHEN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANYL WITTE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARILY SITUATED,<br><br>        Plaintiff,<br><br>    v.<br><br>CHINA INTERNATIONAL MARINE CONTAINERS (GROUP) CO., LTD.; CIMC USA, INC.; SHANGHAI UNIVERSAL LOGISTICS EQUIPMENT CO., LTD. a/k/a "Dong Fang International Containers"; CXIC GROUP CONTAINERS CO. LTD.; SINGAMAS CONTAINER HOLDINGS LTD.,<br><br>        Defendants. | Civil Action No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     JURISDICTION AND VENUE ..........................................................................4

III.    THE PARTIES....................................................................................................6

        A.      Plaintiff ...................................................................................................6

        B.      Defendants...............................................................................................6

IV.     AGENTS AND CO-CONSPIRATORS ..............................................................7

V.      INTERSTATE TRADE AND COMMERCE......................................................11

VI.     FACTUAL ALLEGATIONS ..............................................................................12

        A.      Standard Dry Shipping Containers Have a Large and Standardized
                Market Globally and in the United States. ..................................................12

        B.      Defendants Agreed to Restrict the Output and Fix the Prices of
                Standard Dry Shipping Containers..............................................................15

        C.      Standard Dry Shipping Container Prices More Than Doubled
                During the Conspiracy, Dramatically Increasing Defendants'
                Profits. ......................................................................................................24

        D.      Defendants Have Been Indicted by the United States Department
                of Justice for Their Anticompetitive Scheme. ............................................26

VII.    ADDITIONAL FACTORS CONDUCIVE TO COLLUSION .............................26

VIII.   CLASS ACTION ALLEGATIONS.....................................................................28

IX.     TOLLING OF THE STATUTE OF LIMITATIONS............................................32

        A.      Defendants Fraudulently Concealed their Anticompetitive
                Agreement. ................................................................................................32

        B.      Plaintiff Could Not Have Discovered Their Injury Within Four
                Years of Filing this Complaint. ..................................................................33

        C.      Defendants Have Engaged in a Continuing Violation. .................................34

CLASS ACTION COMPLAINT

D.    The DOJ's Criminal Proceedings Suspended the Statute of Limitations................................................................................34

X.    CLAIMS FOR RELIEF....................................................................35

XI.    PRAYER FOR RELIEF ...................................................................69

XII.    DEMAND FOR JURY TRIAL ..........................................................71

CLASS ACTION COMPLAINT

Plaintiff, Danyl Witte, brings this action on behalf of himself individually and on behalf of a Plaintiff Class consisting of all persons and entities who purchased Standard Dry Shipping Containers indirectly from China International Marine Containers (Group) Co., Ltd. ("CIMC"); CIMC USA, Inc. ("CIMC USA"); Shanghai Universal Logistics Equipment Co., Ltd. ("DF"); CXIC Group Containers Co. Ltd. ("CXIC"); and Singamas Container Holdings Ltd. ("Singamas") (collectively, "Defendants"), and their co-conspirators for personal use in the United States and its territories from at least March 2019 to present (the "Class Period"). Plaintiff brings this Class Action Complaint against Defendants and their co-conspirators for injunctive relief under Section 1 of the Sherman Act, for treble damages under the antitrust laws, unfair competition laws, consumer protection laws, and unjust enrichment common laws of the several states, and demand a trial by jury.

## I.    **INTRODUCTION**

1.    This lawsuit arises from a global conspiracy among Defendants and their co-conspirators to enter into agreements involving Standard Dry Shipping Containers to restrict supplies, fix prices, allocate market shares, stifle competition, and thereby charge the purchaser supra-competitive prices.

2.    Standard Dry Shipping containers are non-refrigerated shipping containers with standardized physical dimensions. They are used to transport consumer goods, medical supplies, electronics, household products, auto parts, and other goods purchased by American businesses and consumers, and are consistently in high demand.

3.    Defendants are the world's dominant manufacturers of Standard Dry Shipping Containers. Together with their co-conspirators, they control around 95% of

1

global production. Each Defendant has been manufacturing these containers for more than two decades and, during the relevant period, shipped thousands of the Standard Dry Shipping Containers per day to customers in the United States and around the world.

4.      Standard Dry Shipping Containers are essential infrastructure for the modern global economy. Therefore, when their supplies are artificially restricted or prices purposefully raised, those effects ripple through the global supply chain, affecting businesses and individuals including those in the United States.

5.      Defendants' secretive anticompetitive agreements began no later than November 14, 2019, and lasted until at least January 2024. During the COVID-19 pandemic, at the very moment when global commerce and household stability depended on a reliable supply of Standard Dry Shipping Containers, Defendants agreed not to compete. Unabashedly, they used their collective control over the market to restrict output, create an artificial supply shortage, raise prices to supra-competitive levels, and profit from the illegal disruption.

6.      **Agreement**. With regular meetings and close correspondence, Defendants agreed to fix prices of and allocate markets for Standard Dry Shipping Containers. As horizontal competitors, they entered into written agreements concerning the production, pricing, and sales of Standard Dry Shipping Containers.

7.      **Implementation**. Defendants' anticompetitive scheme was implemented through concrete restraints on production of Standard Dry Shipping Containers. They (a) limited production shifts and operating hours, (b) agreed not to build new manufacturing facilities, (c) capped production volumes, and (d) restricted the number of containers manufactured for particular customers.

2

CLASS ACTION COMPLAINT

8. **Enforcement**. Defendants monitored and policed their anticompetitive agreement in at least four ways: They (a) used video-surveillance cameras in factories to monitor each participant's actual production volume and compliance with the output restrictions; (b) required each factory to submit a deposit to a penalty fund that would be deducted if any factory broke the agreement; (c) established the "Moon Gazing Fund," a trade association that held regular meetings to allow regular communications and facilitate further coordination; and (d) purposefully concealed the anticompetitive agreement and conduct by deleting illegal communications and keeping written versions of the agreement highly confidential.

9. The consequences were severe. Defendants' anticompetitive conduct artificially doubled the price of the Standard Dry Shipping Containers between 2019 and 2021 alone, increasing Defendants' profits dramatically during the COVID-19 pandemic and global supply-chain crisis, and affecting billions of dollars of commerce.

10. Since Defendants' conspiracy deprived the Standard Dry Shipping Containers market of the competition that should have constrained prices and expanded supply to meet demand, American purchasers, including Plaintiff and the Class, paid much more for the Standard Dry Shipping Containers purchased directly or indirectly by them during the Class Period ("Class Containers") than they would have paid but for Defendants' brazenly anticompetitive conduct.

11. On May 19, 2026, the U.S. Department of Justice announced to the public that a Grand Jury in the United States District Court for the Northern District of California indicted Defendants and their seven associated executives for conspiring to restrict output

CLASS ACTION COMPLAINT

and fix prices in violation of Section 1 of the Sherman Act.[1] One executive, Vick Nam Hing Ma, was arrested in France, and the DOJ reported that extradition proceedings were pending.

12.     During the Class Period, Plaintiff and Class members purchased products affected by Defendants' conspiracy without knowledge of their unlawful conduct. Their injuries, including paying significant overcharges, were the direct, foreseeable, and intended result of Defendants' anticompetitive agreements.

13.     Accordingly, through this action, Plaintiff, on behalf of himself and other members of the putative Class, seeks to recover the overcharges paid by them during the Class Period, other equitable relief, as well as entry of an injunction requiring Defendants to cease their illegal conduct. Defendants must be held accountable for the overcharges and other harm caused by their global price-fixing and output-restriction conspiracy.

## II.     JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), in that this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which Plaintiff and members of the Class are citizens of the United States and Defendants are subjects of a foreign state.

15.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C §§ 1331

---

[1] Superseding Indictment, *United States v. China Int'l Marine Containers (Grp.) Co., LTD., et al.*, No. 25-cr-00311-YGR (N.D. Cal. filed Jan. 22, 2026) [hereinafter Indictment].

and 1337(a) as this action arises under both Section 1 of the Sherman Antitrust Act, 15 U.S.C §§ 1, 3, and Section 16 of the Clayton Act, 15 U.S.C. § 26. Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because these claims are part of the same case or controversy as Plaintiff's federal antitrust claims.

16. This Court has in personam jurisdiction over Defendants, because each: (a) transacted business in the United States, including this District; (b) directly or indirectly sold or marketed substantial quantities of the Class Containers throughout the United States as a whole, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; and/or (d) engaged in an illegal price-fixing and market allocation conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or properties of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Since Defendants conduct business throughout the United States, including in this District, they have purposefully availed themselves of the laws of the United States.

17. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendants, not residents in the United States, may be sued in any judicial district, including in this District. Venue is also proper in this District under 15 U.S.C. §§ 15, 22 because Defendants transacted business, had agents, or were found in this District via Defendants' purposeful sale, distribution, and/or marketing of Standard Dry Shipping Containers, and a substantial part of the affected interstate commerce and trade was

5

conducted within this District.

18.     Defendants' collusive conduct was intended to, and did, cause injury to Plaintiff and members of the Class, who purchased the Class Containers manufactured and sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants. Defendants expressly aimed their conspiracy at the U.S. marketplace, and their collusive conduct has resulted in an adverse effect on purchasers of the Class Containers throughout the United States, including in this District.

## III.     THE PARTIES

### A.     Plaintiff

19.     Plaintiff Danyl Witte ("Witte") is a Minnesota resident. During the Class Period, Witte indirectly purchased one or more Standard Dry Shipping Containers manufactured by Defendants for personal use and not for resale. Witte has therefore suffered antitrust injury as a direct result of the antitrust violations alleged in this Complaint.

### B.     Defendants

20.     Defendant China International Marine Containers (Group) Co., Ltd. ("CIMC") is a publicly traded company, organized and existing under the laws of the People's Republic of China. During the Class Period, CIMC was engaged in the business of manufacturing Standard Dry Shipping Containers and selling them to customers in the United States and elsewhere.

21.     Defendant CIMC USA, Inc. ("CIMC USA") is a subsidiary of CIMC and is organized and existing under the laws of the State of Delaware, with its principal place of business at 289 East Water Tower Drive, Monon, Indiana 47969. CIMC USA is registered

6

to do business in California (Entity # 3578907) and has designated CSC – Lawyers Incorporating Service as its agent for service of process in California. During the Class Period, CIMC USA was a vehicle for CIMC to market, distribute, and sell Standard Dry Shipping Containers to customers in the United States. Collectively, Defendant China International Marine Containers (Group) Co., Ltd. ("CIMC") and CIMC USA are referred to herein as "CIMC."

22.    Defendant Shanghai Universal Logistics Equipment Co., Ltd. ("DF") is a company organized and existing under the laws of the People's Republic of China. DF owns, managed, and does business as a brand of shipping containers called Dong Fang International Containers, also known as DF, DFIC, or Dong Fang. During the Class Period, DF was engaged in the business of manufacturing Standard Dry Shipping Containers and selling them to customers in the United States and elsewhere.

23.    Defendant CXIC Group Containers Co. Ltd. ("CXIC") is a company organized and existing under the laws of the People's Republic of China. During the Class Period, CXIC was engaged in the business of manufacturing Standard Dry Shipping Containers and selling them to customers in the United States and elsewhere.

24.    Defendant Singamas Container Holdings Ltd. ("Singamas") is a publicly traded company, organized and existing under the laws of Hong Kong in the People's Republic of China. During the Class Period, Singamas was engaged in the business of manufacturing Standard Dry Shipping Containers and selling them to customers in the United States and elsewhere.

IV.    <u>AGENTS AND CO-CONSPIRATORS</u>

25.    At all relevant times, the individual executives, officers, employees, and

7

CLASS ACTION COMPLAINT

agents identified below acted within the scope of their employment or agency for their respective corporate employers and for the benefit of the corporate defendants' business. Their acts, omissions, knowledge, and intent are therefore attributable to the corporate defendants.

26.    Boliang Mai has been employed by CIMC in various senior roles. From August 2015 through July 2020, Mai served as President and Chief Executive Officer ("CEO") of CIMC. From August 2020 through August 2023, he served as Chairman, an executive director and CEO of CIMC. From September 2023 to present, he serves as the Chairman and an executive director of CIMC. Mai is believed to be a resident of the People's Republic of China. Mai participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-conspirators.

27.    Tianhua Huang was employed by CIMC as Vice President since 2018 and is believed to be a resident of the People's Republic of China. Huang participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-conspirators.

28.    Yongbo Wan, was employed by CIMC as General Manager of CIMC's Operation Management Center and is believed to be a resident of the People's Republic of China. Wan participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-

8

conspirators.

29.   Qianmin Li was employed by DF as General Manager and is believed to be a resident of the People's Republic of China. Li participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-conspirators.

30.   Yuqiang Zhang was employed by CXIC as CEO and is believed to be a resident of the People's Republic of China. Zhang participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-conspirators.

31.   Siong Seng Teo was employed by Singamas as Chief Executive Officer and Chairman and is believed to be a resident of the Republic of Singapore. Teo participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-conspirators.

32.   Vick Nam Hing Ma was employed by Singamas as Marketing Director and is believed to be a resident of Hong Kong, People's Republic of China. Ma participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-conspirators. He was arrested on April 14, 2026, in France, and his extradition to the United States is pending.

33.   Co-Conspirator Company A ("Company A") is a company organized and

9

CLASS ACTION COMPLAINT

existing under the laws of the People's Republic of China. During the Class Period, Company A was engaged in the business of manufacturing Standard Dry Shipping Containers and selling them to customers in the United States and elsewhere. Company A and its officers, directors, agents, employees, and/or representatives participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-conspirators.

34.    Co-Conspirator Company B ("Company B") is a company organized and existing under the laws of the People's Republic of China. During the Class Period, Company B was engaged in the business of manufacturing Standard Dry Shipping Containers and selling them to customers in the United States and elsewhere. Company B and its officers, directors, agents, employees, and/or representatives participated in meetings, communications, and other conduct in furtherance of the unlawful conspiracy alleged herein, including the formation, implementation, and enforcement of the anticompetitive agreements between Defendants and their co-conspirators.

35.    Various companies and/or individuals not identified as Defendants herein have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof. Plaintiff reserves the right to amend this Complaint to add these co-conspirators to this action at an appropriate time in the future.

36.    Whenever in this Complaint reference is made to any act, deed, or transaction of any company, the allegation means that the company engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of

10

CLASS ACTION COMPLAINT

its business or affairs.

## V.    **INTERSTATE TRADE AND COMMERCE**

37.    The conduct of Defendants and their co-conspirators have taken place in, and affected the continuous flow of interstate trade and commerce of the United States in that, among other things, during the Class Period:

a.    Defendants and their co-conspirators sold the Class Containers in, or for delivery to, the United States;

b.    The Class Containers traveled to and within the United States, and substantially affected, interstate and import trade and commerce;

c.    The conspiracy involved and had a direct, substantial, and reasonably foreseeable effect on interstate and import trade and commerce involving the Class Containers; and

d.    The conspiracy alleged herein affected billions of dollars of commerce: Defendants and the co-conspiring companies collectively control around 95% of the global Standard Dry Shipping Containers market, including a substantial part of the United States Standard Dry Shipping Containers market. Defendants and their co-conspirators have inflicted antitrust injury by artificially raising prices paid by Plaintiff and member of the Classes.

38.    Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, including activities to fix, raise, maintain, and/or stabilize prices, and to allocate the market and

CLASS ACTION COMPLAINT

customers for the Class Containers. Their conspiracy unreasonably restrained trade and adversely affected the market for Standard Dry Shipping Containers in the United States.

39.     The Class Containers manufactured by and sold by Defendants, their subsidiaries, and their co-conspirators during the Class Period were imported into, and sold in, the United States, ultimately to indirect purchasers including Plaintiff and members of the Classes.

40.     Defendants' conspiracy and wrongdoing described herein harmed persons in the United States who purchased the Class Containers in the United States that were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

## VI.    FACTUAL ALLEGATIONS

### A.    Standard Dry Shipping Containers Have a Large and Standardized Market Globally and in the United States.

41.     Shipping containers are the backbone of modern commerce. Millions of these containers travel across the world's oceans, railways, and highways each year, carrying billions of dollars of goods destined for American businesses and households.

42.     Dry shipping containers—the most common type of shipping containers—are non-refrigerated, general-purpose containers typically made from corrugated, rust-resistant steel. They are sold in both non-standard and standard dimensions.

43.     The four most common Standard Dry Shipping Containers dimensions are: (1) 20-foot long at a shorter height; (2) 40-foot long at a shorter height; (3) 40-foot long at a taller height (called a "high-cube"); and (4) 45-foot long at the high-cube height.

44.     Standard Dry Shipping Containers are used not only for ocean freight, but

CLASS ACTION COMPLAINT

also for storage, construction, manufacturing, agriculture, retail, emergency staging, equipment housing, workshops offices, and container-conversion projects. "One-trip" containers, which have typically only made a single ocean crossing from the manufacturer, are especially desirable for resale, storage, and conversion projects due to their newer condition.

45.　The shipping container market is projected to grow from $13.18 billion in 2026 to $38.03 billion by 2035, with a compound annual growth rate of 12.5%.[2]

46.　The distribution chain for Standard Dry Shipping Containers connects overseas manufacturers to purchasers and end users in the United States through a series of commercial intermediaries. Defendants and their co-conspirators sell Standard Dry Shipping Containers to their customers, including major U.S.-based container lessors, shipping lines, logistics companies, dealers, wholesalers, and other direct purchaser intermediaries, as well as similar customers based in Europe, the People's Republic of China, and elsewhere. These intermediaries then place containers into freight service, lease them to customers, resell them through dealer networks, or sell them to end users for storage, shipping, job-site operations, manufacturing, remodeling, office conversions, and other commercial or personal uses.

47.　Newly manufactured Standard Dry Shipping Containers commonly enter the United States through the same global trade system. After manufacturing, Standard Dry

---

[2] *See* Yogesh Kulkarni, *Global Shipping Container Market: Size, Trends, Production, Supply Chain, and Competitive Landscape (2026-2035)*, Towards Packaging (Mar. 16, 2026), https://www.towardspackaging.com/insights/shipping-container-market-sizing#:~:text=The%20shipping%20container%20market%20is,autonomous%20vessels%2C%20and%20sustainability%20shifts.

CLASS ACTION COMPLAINT

Shipping Containers are usually locally loaded with cargo bound for countries overseas, including the United States; purchased by shipping lines, leasing companies, logistics companies, dealers, or wholesalers; transported by ocean carrier to ports in the United States; and unloaded after arrival. Once in the United States, some containers remain in freight circulation, while others are sold or leased through intermediaries as "one-trip," "new," or used containers. These containers then move through domestic yards, dealers, wholesalers, resellers, and lessors before reaching businesses and individuals who purchase or lease them for storage, transport, commercial use, or conversion projects.

48. As a result, the Standard Dry Shipping Containers supply chain looks something like the graphic below:



49. Standard Dry Shipping Containers are physical, traceable, unit-based products. Their standardized dimensions, commodity-like nature, and identifiable distribution chain make it possible to measure overcharges and determine the extent to which inflated manufacturer prices were passed through to indirect purchasers.

14

CLASS ACTION COMPLAINT

**B.    Defendants Agreed to Restrict the Output and Fix the Prices of Standard Dry Shipping Containers**

50.    At least during the Class Period, Defendants, together with Company A and Company B, manufactured approximately 95% of the world's Standard Dry Shipping Containers.

51.    At least as early as March 2019, representatives of several conspirator companies began discussing ways to collectively restrict or reduce the supply of Standard Dry Shipping Containers and raise prices.

52.    On or about November 14, 2019, representatives of CIMC, DF, CXIC, and Company A met at CIMC's headquarters in Shenzhen, China. Attendees included Yongbo Wan and Tianhua Huang of CIMC, Qianmin Li of DF, Yuqiang Zhang of CXIC, and an executive of Company A.

53.    At that meeting, the participants agreed on a coordinated production-restriction plan, which would restrain CIMC's, DF's, CXIC's, and Company A's output of Standard Dry Shipping Containers by several means:

    a.    Limiting the number of shifts and hours that each production line for Standard Dry Shipping Containers could run per day;

    b.    Installing video surveillance on all Standard Dry Shipping Containers production lines to ensure that the companies did not exceed the agreed-upon limitations;

    c.    Not building any new container manufacturing factories; and

    d.    Establishing a fund that included a mechanism to penalize financially any company cheating on the output-restriction agreement.

15

CLASS ACTION COMPLAINT

54.    The purpose of the agreement was to raise the prices of Standard Dry Shipping Containers. By limiting the number of Standard Dry Shipping Containers available for sale, Defendants and their co-conspirators could create artificial scarcity and charge prices above competitive levels.

55.    Although Singamas and Company B did not attend the November 14, 2019 meeting, the participants (CIMC, DF, CXIC, and Company A) contemplated that Singamas and Company B would later join the output-restriction agreement. Indeed, Singamas and Company B joined the output-restriction agreement by at least March 2020.

56.    The conspirators continued organizing after the November 14, 2019 meeting. On or about November 21, 2019, a Singamas executive ("Singamas Executive 1") informed Siong Seng Teo of Singamas that Qianmin Li of DF had called for a December 3, 2019 meeting of "all the (6) factories" (Defendants, Company A, and Company B) at DF's Shanghai office. In this email, Singamas Executive 1 stated that "[t]he meeting agenda will be production capacity and healthy development of container industry, etc."

57.    Representatives of all six manufacturers met in Shanghai on Tuesday, December 3, 2019.

58.    Two days later, on or about December 5, 2019, Singamas Executive 1 reported internally to Siong Seng Teo regarding his meeting with the other five company conspirators that took place on or about December 3, 2019. The report confirmed that "[r]epresentatives from 6 factories attended the meeting at Dong Fang Shanghai office this Tuesday." Singamas Executive 1 additionally reported that Defendants and their co-conspirators discussed:

    a.    Limiting the number of shifts and hours that each production line for

16

CLASS ACTION COMPLAINT

Standard Dry Shipping Containers could run per day;

b.    Installing "CCTV [. . .] in all production lines in March 2020";

c.    Building "[n]o additional new production line;" and

d.    Having each factory submit a deposit that would be deducted "[i]f any factory break [sic] the agreement."

59.    The same report reflected the company conspirators' awareness of antitrust risk. Singamas Executive 1 stated that "[d]uring the meeting, I have reminded them not to be high profile since it might violate the Monopoly Law or being accused of price manipulation by our customers."

60.    By February 2020, CIMC had circulated a draft contract titled the "Shenzhen Moon Gazing Equity Investment Fund" (the "Moon Gazing Fund Contract"). The draft memorialized aspects of the output-restriction agreement between Defendants and their co-conspirators.

61.    In or around March 2020, the six company conspirators participated in a ceremony at which each signed a final version of the Moon Gazing Fund Contract.

i.    **Defendants Implemented and Refined Their Anticompetitive Scheme.**

62.    After forming the agreement, Defendants and their co-conspirators continued to refine and improve the mechanics of the conspiracy. They adjusted, among other things, how production would be limited, how quotas would be calculated, and how customers would be handled.

63.    By September 2020, the conspirators moved beyond general production limits and agreed to restrict Standard Dry Shipping Containers' supply for specific

17

CLASS ACTION COMPLAINT

customers. These customers, whom the conspirator companies referred to as "mainstream customers" or "mainstream clients," included major U.S.-based container lessors, shipping lines, and logistics companies, as well as similar customers based in Europe, the People's Republic of China, and other markets

64. The conspirators also revised the form of the restrictions. On or about July 7, 2022, Singamas executives, including Siong Seng Teo, discussed the conspirators' output-restriction measures and expressed a preference for using "a monthly total quota instead" of "the restriction on working hours per day." That shift would allow the conspirators to control output more precisely by volume rather than generally by factory operating time.

65. From at least September 2022 through November 2023, Defendants and their co-conspirators used coordinated total cargo volume caps to restrain production, such that each manufacturer's allowable production was assigned and tracked across companies and production lines.

66. For example, on or about November 20, 2023, Vick Ma of Singamas presented materials to Siong Seng Teo of Singamas setting out the conspiracy's "Total Allowable capacity" and "allowable quota" figures. The presentation organized production limits by company and factory lines and measured production using TEUs—a common shipping-industry abbreviation for "twenty-foot equivalent units."

67. The image below is an excerpt from that presentation, with the names of Company A, Company B, and their factory lines redacted:

18

CLASS ACTION COMPLAINT

**Dec allowable quota – 50 hours = 125,000 Teus for whole industry**

| | | Per hour capacity | Sep 2022 to Apr 2023 | May 2023 | Jun to Aug 2023 | Sep 2023 | Oct 2023 | Nov 2023 | Subtotal of Nov | % of Nov 2023 |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total Hours: | | 150 | 0 | 50 | 40 | 30 | 20 | | |
| CIMC | 1&2 风帆(AB合并) | 220 | 33,000 | 0 | 11,000 | 8,800 | 6,600 | 4,400 | | |
| | 3 新会A | 18 | 2,700 | 0 | 900 | 720 | 540 | 360 | | |
| | 4 新会B | 80 | 12,000 | 0 | 4,000 | 3,200 | 2,400 | 1,600 | | |
| | 5 漳州 ZCMC (B LINE) | 56 | 8,400 | 0 | 2,800 | 2,240 | 1,680 | 1,120 | | |
| | 6 宁波 NCLE (A LINE) | 110 | 16,500 | 0 | 5,500 | 4,400 | 3,300 | 2,200 | | |
| | 7 宁波 SCBC (B LINE) | 78 | 11,700 | 0 | 3,900 | 3,120 | 2,340 | 1,560 | 22,160 | 43% |
| | 8 华山 SYLE (B LINE) | 106 | 15,900 | 0 | 5,300 | 4,240 | 3,180 | 2,120 | | |
| | 9 太仓C | 110 | 16,500 | 0 | 5,500 | 4,400 | 3,300 | 2,200 | | |
| | 10 太仓B | 102 | 15,300 | 0 | 5,100 | 4,080 | 3,060 | 2,040 | | |
| | 11 青岛 QDCM (B LINE) | 90 | 13,500 | 0 | 4,500 | 3,600 | 2,700 | 1,800 | | |
| | 12 天津 TJCC (B LINE) | 70 | 10,500 | 0 | 3,500 | 2,800 | 2,100 | 1,400 | | |
| | 13 润扬 RYC (B LINE) | 34 | 5,100 | 0 | 1,700 | 1,360 | 1,020 | 680 | | |
| | 14 大连 DCMC (B LINE) | 34 | 5,100 | 0 | 1,700 | 1,360 | 1,020 | 680 | | |
| DFIC | 15 广州 | 94 | 14,100 | 0 | 4,700 | 3,760 | 2,820 | 1,880 | | |
| | 16 青岛 DFQT (B LINE) | 72 | 10,800 | 0 | 3,600 | 2,880 | 2,160 | 1,440 | | |
| | 17 德州 DFJZ (B LINE) | 94 | 14,100 | 0 | 4,700 | 3,760 | 2,820 | 1,880 | | |
| | 18 宁波 | 100 | 15,000 | 0 | 5,000 | 4,000 | 3,000 | 2,000 | 12,960.00 | 25% |
| | 19 国东标 | 104 | 15,600 | 0 | 5,200 | 4,160 | 3,120 | 2,080 | | |
| | 20 国东标杯 | 80 | 12,000 | 0 | 4,000 | 3,200 | 2,400 | 1,600 | | |
| | 21 连云港 DFLYG (B LINE) | 104 | 15,600 | 0 | 5,200 | 4,160 | 3,120 | 2,080 | | |
| CXIC | 22 天津 TXIC (B LINE) | 70 | 10,500 | 0 | 3,500 | 2,800 | 2,100 | 1,400 | | |
| | 23 青岛 QXIC (B LINE) | 72 | 10,800 | 0 | 3,600 | 2,880 | 2,160 | 1,440 | | |
| | 24 扬州 | 104 | 15,600 | 0 | 5,200 | 4,160 | 3,120 | 2,080 | 8,120 | 15% |
| | 25 嘉善 JXIC (A LINE) | 60 | 9,000 | 0 | 3,000 | 2,400 | 1,800 | 1,200 | | |
| | 26 宁波 | 100 | 15,000 | 0 | 5,000 | 4,000 | 3,000 | 2,000 | | |
| SINGAMAS | 27 宁山 | 68 | 10,200 | 0 | 10,000 | 2,720 | 2,040 | 1,360 | 2,480 | 5% |
| | 28 厦门 | 56 | 8,400 | 0 | | 2,240 | 1,680 | 1,120 | | |
| | 29 | 90 | 13,500 | 0 | 4,500 | 3,600 | 2,700 | 1,800 | 3,600 | 7% |
| | 30 | 90 | 13,500 | 0 | 4,500 | 3,600 | 2,700 | 1,800 | | |
| | 31 | 100 | 15,000 | 0 | 5,000 | 4,000 | 3,000 | 2,000 | 2,000 | 4% |
| Total Allowable capacity | | | 384,900 | 0 | 132,100 | 102,640 | 76,980 | 51,320 | 51,320 | 100% |
| Total (Sep 2022 to Nov 2023) | | | | | 747,940 | | | | | |
| Remarks | | | 10,000 | Special granted quota to produce TWN orders only (original 6,800 TEUs) | | | | | | |

### ii.   Defendants Monitored and Enforced Compliance with the Agreement.

68.     The success of the conspiracy crucially depended on each company conspirator's compliance. To ensure no participant undercut the others by producing more Standard Dry Shipping Containers than allowed, Defendants and their co-conspirators built monitoring and enforcement mechanisms into the agreements and actively utilized these mechanisms.

69.     According to the Moon Gazing Fund Contract, the conspirator companies installed about 87 cameras on 49 container production lines. These cameras allowed the manufacturer to closely observe factory operations and verify compliance with the agreed production limits.

70.     The surveillance system was used in practice. In or around June 2021, for example, Yongbo Wan of CIMC sent Tianhua Huang of CIMC an audit of the company

19

conspirators' production lines that included screenshots from the surveillance footage.

71.    The image below is a screenshot of surveillance footage of a Company A factory that was included in the audit sent to Huang, with Company A's name redacted. The screenshot indicated that the production at this factory was counted by the containers that exit from the bottom right corner of the camera's view:



### iii.    Defendants Facilitated the Conspiracy Through In-Person Meetings, Group Chats, and Other Communication Channels.

72.    Defendants and their co-conspirators also created communication channels to coordinate their conduct. They created a WeChat group and circulated contact lists identifying representatives at each conspirator company, including Yongbo Wan of CIMC, Tianhua Huang of CIMC, Qianmin Li of DF, and Yuqiang Zhang of CXIC.

73.    At the same time, the conspirators took care to avoid creating an obvious written record. Defendants and their co-conspirators preferred in-person discussions "to avoid the suspicion of industry monopoly[.]"

20

74.    In or around February 2023, for example, Vick Ma of Singamas, an executive of Singamas ("Singamas Executive 2"), Tianhua Huang of CIMC, Yongbo Wan of CIMC, Qianmin Li of DF, and Yuqiang Zhang of CXIC met in person to discuss issues related to the conspiracy.

75.    In or around March 2024, another in-person meeting took place at CIMC's headquarters in Shenzhen. Attendees included Boliang Mai of CIMC, Yongbo Wan of CIMC, Tianhua Huang of CIMC, an executive from DF, Yuqiang Zhang of CXIC, Vick Ma of Singamas, and two executives from Company A. During that meeting, the participants discussed output "control mechanism[s]."

### iv.    Defendants Attempted to Eliminate Competition from Smaller Manufacturers Outside the Conspiracy.

76.    Defendants and their co-conspirators also targeted competitive threats from smaller manufacturers that were not part of the conspiracy. Beginning at least in 2020 and continuing throughout the conspiracy, the conspirators monitored the smaller shipping container manufacturers, gathered information on their production and customers, and discussed how to respond to and/or prevent their presence and growth in the market.

77.    On or around August 7 and 10, 2023, the conspirators discussed launching a "war" against the smaller manufacturers. Defendants and their co-conspirators sought "to strike back by sentencing [sic] the price war against these small factories. [. . .] The aim is to signalize these small factories not to grab the orders in low price [sic] which violated the effort to stabilize the price[.]"

### v.    CIMC and DF Attempted to Expand the Conspiracy to Refrigerated Shipping Containers.

78.    Shortly    after    Defendants    and    their    co-conspirators    formed    their

21

CLASS ACTION COMPLAINT

anticompetitive scheme for Standard Dry Shipping Containers, at least CIMC and DF attempted to expand similar restriction practices to refrigerated shipping containers, also known as "reefers."

79.     On or about May 15, 2020, Tianhua Huang of CIMC emailed the CEO of Company C, a competing reefer manufacturer. In that email, Huang stated that the Standard Dry Shipping Containers manufacturers had "reached a consensus and established industry self-discipline actions" to address "overcapacity" and other issues.

80.     Huang then proposed that "all standard reefer manufacturers, like the standard dry box manufacturers, shall negotiate and communicate with each other, act together, follow the dry box practice, mainly including, (a) No capacity increase, (b) All standard reefer manufacturers run one shift only."

81.     The CEO of Company C declined that proposal, stating that "any such coordination is strictly forbidden by the compliance policies" of Company C.

82.     This attempted expansion confirms that Defendants understood their anticompetitive agreement as a coordinated industry practice that could be replicated in adjacent container markets.

> **vi.     Defendants Knew the Illegality of their Actions and Took Steps to Conceal Their Anticompetitive Agreements.**

83.     Throughout the conspiracy, the conspirators were fully aware that their actions were in violation of antitrust laws. Understanding the illegality of their actions, Defendants and the Co-Conspirators made efforts to conceal any evidence of their actions by deleting sensitive communications, avoiding use of certain problematic terms in their communication, and took steps to keep the agreements and the conspiracy highly

CLASS ACTION COMPLAINT

confidential, among other measures.

84.   In or around December 2019, after receiving Singamas Executive 1's report about the meeting of all six conspirator companies, Siong Seng Teo wrote that "we also need to keep low key." A Singamas board member responded that "[t]he discussion appeared to be anti-competition to me [. . . .] I feel very uneasy reading your report. May be [sic] we should delete this string of emails after reading?" Teo answered: "Yes I feel the same, told [Singamas Executive 1] and [Singamas Executive 3] at am call."

85.   Singamas executives later edited internal materials to avoid antitrust-sensitive language. In or around October 2021, another co-conspiring Singamas executive ("Singamas Executive 3") reviewed a draft slide deck prepared by Singamas Executive 2 for a presentation to Singamas's board of directors. The draft slides mentioned a "[m]anufacturing sector official and unofficial association/alliance." Singamas Executive 3 told Singamas Executive 2, "I am generally fine with your ppt except on page 3, please delete 'alliance' as it is quite sensitive under anti-trust law."

86.   Similarly, in or around March 2022, a CIMC executive circulated to fellow CIMC executives—including Tianhua Huang and Yongbo Wan—a report by a then-U.S. Federal Maritime Commissioner and an excerpt from an interview of that commissioner. The executive quoted a Chinese translation of the Commissioner's statement that "Chinese container manufacturing clearly took steps together to suppress the market prior to the pandemic. Those efforts resulted in part in the congestion issues and increases in containerized prices and magnified the issues created by congestion down the line. So they used their market power to control the market." Afterwards, CIMC Chairman Boliang Mai instructed subordinates, including Huang and Wan, to pay close attention but not to respond

23

CLASS ACTION COMPLAINT

or discuss the issue.

87. That same month, in or around March 2022, Singamas Executive 3 reviewed a draft slide deck for Siong Seng Teo's upcoming presentation to investors of Singamas's 2021 annual results. Singamas Executive 3 suggested to Teo and other Singamas executives that, for the topic of "market discipline, it is better not to put on the slide due to anti-trust issue." In response, Teo stated: "Appreciate, I will make some amendments to the slide (take out come [sic] words) and revert tomorrow am."

88. In or around February 2023, another Singamas executive explained that "each mainstream box manufacturing group jointly signed an agreement on the healthy and sustainable development of the industry, but the specific content of the agreement was kept confidential at a very high level and could not be found out. This agreement should currently be kept at the Head Office."

89. In or around March 2023, Vick Ma prepared minutes of a March 2023 meeting between himself, Siong Seng Teo, and other Singamas executives. At that meeting, Singamas Executive 3 "raised the concern about Anti-Trust violations" and was concerned that "there may be a risk of being sued by clients."

**C.** **Standard Dry Shipping Container Prices More Than Doubled During the Conspiracy, Dramatically Increasing Defendants' Profits.**

90. Defendants' conspiracy had the intended and foreseeable effect. Standard Dry Shipping Containers prices rose sharply during the conspiracy, while Defendants' profits increased dramatically.

91. On or about December 13, 2019, CIMC Chairman Boliang Mai predicted internally that the price of 20-foot Standard Dry Shipping Containers would rise to more

CLASS ACTION COMPLAINT

than $2,000 in an email to his subordinates Tianhua Huang, Yongbo Wan, and a CIMC executive. Mai instructed the email recipients not to forward his email.

92.    Prices then rose far beyond that level. From 2019 to 2021, the price of 20-foot Standard Dry Shipping Containers more than doubled, increasing from roughly $1,600 to over $3,500. Over the same period, the price of 40-foot Standard Dry Shipping Containers more than doubled from roughly $2,800 to over $5,900; and the price of a standard dry 40-foot high cube container more than doubled from roughly $3,000 to over $6,000. From 2019 to 2022, the price of a standard dry 45-foot high cube container increased from roughly $4,100 to more than $5,730.

93.    Defendants' financial results moved in the same direction. CIMC's container manufacturing business segment grew nearly one hundredfold in profits from about $19.8 million USD in 2019 to $288 million USD in 2020 to $1.75 billion USD in 2021.

94.    Singamas's net income rose from a loss of about $110 million USD in 2019 to profits of about $4.6 million USD in 2020 and about $186.8 million USD in 2021.

95.    The conspirators recognized the connection between their conspiracy and profitability. For example, on or around May 2020, DF wrote to CIMC, praising how cooperation on the production of Standard Dry Shipping Containers had restored industry profitability. In or around April 2021, Singamas Executive 1 also emailed Siong Seng Teo of Singamas to highlight the industry's positive profit outlook as the result of "strong demand, container shortage, plus strict discipline in pricing and working hours." He stated: "I believe all container factories have significant increase in sales revenue and profit." Additionally, in or around January 2023, co-conspiring Singamas executives wrote to each other, noting that the entire Standard Dry Shipping Containers industry profited from the

25

conspiracy in 2021 and 2022.

96.    The price and profit increases were the foreseeable and intended consequence of Defendants' and their co-conspirators' anticompetitive conduct in a highly concentrated market.

**D.    Defendants Have Been Indicted by the United States Department of Justice for Their Anticompetitive Scheme.**

97.    On May 19, 2026, the United States Department of Justice announced that a grand jury in the Northern District of California had indicted Defendants, along with seven of their executives, for participating in a conspiracy to restrict output, fix prices, and allocate markets for Standard Dry Shipping Containers in violation of Section 1 of the Sherman Act.

98.    According to the indictment, from no later than November 2019 until at least January 2024, Defendants and their co-conspirators agreed to and did suppress the production of Standard Dry Shipping Containers, limit capacity, allocate production volumes, monitor compliance with agreed restrictions, and impose penalties for deviations from the agreement.

99.    Until the DOJ indictment was publicly made available, due to the extensive and fraudulent measures to conceal their illegal activities, there was no way Plaintiff or the members of the Class could discover the conspiracy or the illegal agreement coordinated and entered into by Defendants and the Co-Conspirators.

**VII.    ADDITIONAL FACTORS CONDUCIVE TO COLLUSION**

100.    The Standard Dry Shipping Containers market has classic features that make collusive conduct easier to form, maintain, and conceal. It has high market concentration,

substantial barriers to entry, standardized products, and inelastic demand—allowing monitoring of production by container type, factory, and production line.

101.    **High Market Concentration**. From at least 2019 through 2024, Defendants CIMC, DF, CXIC, and Singamas, together with Company A and Company B, manufactured approximately 95% of the world's Standard Dry Shipping Containers. With so few dominant manufacturers, Defendants could more easily coordinate output restrictions, monitor one another's conduct, identify deviations, and maintain supra-competitive prices.

102.    **Substantial Barriers to Entry**. Manufacturing Standard Dry Shipping Containers requires specialized factories, capital investment, steel inputs, technical expertise, customer relationships, logistics infrastructure, and the ability to consistently satisfy international standards. Defendants and their co-conspirators could easily pressure small manufacturers and new entrants, who could not quickly expand output to discipline supra-competitive prices.

103.    **Inelastic Demand**. Shipping lines, leasing companies, logistics companies, dealers, wholesalers, and end users regularly depended on these containers to move, store, lease, resell, or convert goods and equipment for businesses and individuals in the United States and around the world. When prices rose, purchasers often had no practical substitute.

104.    **Standardized Products**. Because the Standard Dry Shipping Containers are sold in widely recognized sizes and measured in units such as twenty-foot equivalent units, Defendants could reliably coordinate restrictions on output and prices across factories, product types, and customers.

105.    These market conditions gave Defendants both the incentive and ability to

27

collude. In a competitive market, increased demand and rising prices would have attracted new manufacturers and encouraged existing manufacturers to expand output, lower prices, and compete for customers. When Defendants agreed to do the opposite, they halted the healthy growth and competition in the Standard Dry Shipping Containers market.

## VIII.    CLASS ACTION ALLEGATIONS

106.    Plaintiff brings this action on behalf of himself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2), and (b)(3), seeking injunctive relief pursuant to federal law, and damages pursuant to various state antitrust, unfair competition, unjust enrichment, and consumer protection laws of the states listed below on behalf of the members of the following classes:

> a.    **Nationwide Injunctive Relief Class**: All persons or entities who indirectly purchased Standard Dry Shipping Containers from one or more Defendants or co-conspirators in the United States during the Class Period for personal use.

> b.    **Respective State Law Damages Class**: All persons or entities who indirectly purchased Standard Dry Shipping Containers from one or more Defendants or co-conspirators in the following states during the Class Period for personal use: Alabama, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon,

CLASS ACTION COMPLAINT

Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

107. The Respective State Law Damages Classes are collectively referred to as the "Classes" unless otherwise indicated. Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded from these Classes are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action. Further excluded from the Classes and the National Injunctive Relief Class are purchasers of value-added products not manufactured, supplied or processed by Defendants, or otherwise not under the control of defendants.

108. *Class Identity*. The above-defined Classes are readily identifiable and are ones for which records should exist.

109. *Numerosity*. While Plaintiff does not know the exact number of members of the Classes, Plaintiff is informed and believes that there are likely hundreds of thousands of members. Due to the nature of the trade and commerce involved, the Classes are so numerous and geographically dispersed that joinder of all Class members in the prosecution of this action is impracticable.

110. *Typicality*. Plaintiff's' claims are typical of the claims of their fellow Class members, because Plaintiff indirectly purchased Standard Dry Shipping Containers that were manufactured or sold by one or more Defendants during the Class Period. Plaintiff

29

and all Class members were damaged in the same manner by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Classes

111. ***Common Questions Predominate***. There are questions of law and fact common to the Classes, including, but not limited to:

a. Whether Defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Standard Dry Shipping Containers sold in interstate commerce in the United States;

b. The identity of the participants of the alleged conspiracy;

c. The duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

d. Whether the alleged conspiracy violated the antitrust and consumer protection laws of the various states;

e. Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiff and the other members of the Classes;

f. The effect of Defendants' alleged conspiracy on the prices of Standard Dry Shipping Containers sold in the United States during the Class Period;

g. Whether Plaintiff and other members of the Classes are entitled to, among other things, injunctive relief and if so, the nature and extent

30

CLASS ACTION COMPLAINT

of such injunctive relief; and

h.　　The appropriate class-wide measure of damages.

112.　These and other questions of law or fact, which are common to the members of the Classes, predominate over any questions affecting only individual members of the Classes.

113.　*Adequacy*. Plaintiff will fairly and adequately represent the interests of the Classes, because they purchased Standard Dry Shipping Containers that were manufactured or sold by one or more Defendants during the Class Period and have no conflicts with any other members of the Classes. Furthermore, Plaintiff has retained sophisticated and competent counsel who are experienced in prosecuting antitrust class actions, as well as other complex litigation.

114.　*Superiority*. This class action is superior to other alternatives for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein as a class action will eliminate the high possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action. Moreover, the prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants. Plaintiff brings this class action on behalf of all persons similarly situated pursuant to Rule 23, on behalf of all persons and entities that, as residents of various states, indirectly purchased one or more Standard Dry Shipping Containers that Defendants or their co-conspirator produced for personal use during the respective Class Period.

115.　*Injunctive Relief*. Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes

31

CLASS ACTION COMPLAINT

as a whole.

## IX.     TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Defendants Fraudulently Concealed their Anticompetitive Agreement.

116.     Defendants' fraudulent concealment tolled the statute of limitations on the claims asserted by Plaintiff and the Classes.

117.     Under the fraudulent concealment doctrine, the claims of Plaintiff and members of the Classes alleged in this Complaint did or will only accrue upon discovery of the Defendants' conspiracy to fix prices of, and allocate markets for, Standard Dry Shipping Containers, as a result of Defendants' concealment of the material facts.

118.     Plaintiff and members of the Classes were kept ignorant by Defendants of crucial information required for the prosecution of their claims, without any fault or lack of diligence on their part. Plaintiff and members of the Classes did not discover and could not discover, through the exercise of reasonable diligence, the existence of the alleged conspiracy.

119.     Plaintiff and members of the Classes were unaware of Defendants' unlawful conduct and did not know that they were paying supra-competitive prices for Standard Dry Shipping Containers throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiff and members of the Classes that they were being injured by Defendants' unlawful conduct.

120.     On the contrary, during the Class Period, Defendants fraudulently concealed their anticompetitive conduct by deleting sensitive communications such as emails and by keeping their agreements highly confidential as fully described above.

121.     By its very nature, Defendants' and their co-conspirators' anticompetitive

32

CLASS ACTION COMPLAINT

conspiracy was inherently self-concealing. Standard Dry Shipping Containers are not exempt from antitrust regulation and, thus, Plaintiff and members of the Classes reasonably considered the Standard Dry Shipping Containers industry to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin investigating the legitimacy of Defendants' prices for Standard Dry Shipping Containers.

122. Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed until May 19, 2026, when the DOJ filed criminal charges against the Defendants for violating Section 1 of the Sherman Act.

**B.     Plaintiff Could Not Have Discovered Their Injury Within Four Years of Filing this Complaint.**

123. The discovery rule tolled any statute of limitations otherwise applicable to any claims asserted in this Complaint.

124. Plaintiff and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants entered into a combination and conspiracy to fix prices of, and allocate markets for, Standard Dry Shipping Containers, until May 19, 2026, when the DOJ filed criminal charges against the Defendants for violating Section 1 of the Sherman Act.

125. Plaintiff and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the

33

CLASS ACTION COMPLAINT

claims set forth herein.

126.    Plaintiff and members of the Classes are consumers who purchased Standard Dry Shipping Containers for their own use and not for resale. Defendants' conspiracy was elaborate and well-concealed. No information concerning the conspiracy was in the public domain or available to Plaintiff and members of the Classes. Moreover, Plaintiff and members of the Classes had no direct contact or interaction with Defendants and had no means from which they could have discovered that Defendants were engaged in the conspiracy combination and conspiracy alleged herein.

## C.    Defendants Have Engaged in a Continuing Violation.

127.    This Complaint alleges a continuing course of unlawful conduct by which Defendants have inflicted continuing and accumulating harm within the applicable statutes of limitations.

128.    Each time Defendants engaged in an unlawful act described herein, Defendants undertook an overt act that has inflicted harm on Plaintiff and the Class members.

## D.    The DOJ's Criminal Proceedings Suspended the Statute of Limitations

129.    Criminal proceedings instituted by the DOJ against the Defendants and seven associated executives also have suspended the running of the statute of limitations pursuant to Section 5(i) of the Clayton Act, 15 U.S.C. § 16(i). Each of those actions is a "criminal proceeding . . . instituted by the United States to prevent, restrain, or punish violations of" the Sherman Act. Plaintiff's claims are "based in whole or in part on [the] matter complained of" in the criminal proceedings. Under Section 5(i), the statute of limitations is "suspended during the pendency" of the criminal proceedings "and for one year

34

CLASS ACTION COMPLAINT

thereafter[.]"

130.    For these reasons, the statutes of limitations have been tolled with respect to the claims of Plaintiff and members of the Classes asserted in this Complaint.

## X.    CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**15 U.S.C. § 1**
**(On Behalf of Nationwide Class for Injunctive and Equitable Relief)**

131.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint..

132.    Beginning at a time currently unknown to Plaintiff, but at least as early as March 2019, and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade artificially to fix, raise, stabilize, and peg prices for Standard Dry Shipping Containers in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

133.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

      a.    Fixing, raising, stabilizing, and pegging the price of Standard Dry Shipping Containers; and

      b.    Allocating among themselves and collusively reducing the production of Standard Dry Shipping Containers.

35

134. The combination and conspiracy alleged herein has had the following effects, among others:

    a.    Price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in the United States;

    b.    Prices for Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

    c.    Those who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition.

135. Plaintiff and Class Members have been injured and will continue to be injured in their businesses and property by paying more for Standard Dry Shipping Containers purchased indirectly from the Defendants and their co-conspirators for their personal use than they would have paid and will pay in the absence of the combination and conspiracy, as a result of higher prices paid for Standard Dry Shipping Containers by the direct purchasers.

136. Plaintiff and Class Members are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### SECOND CLAIM FOR RELIEF
### Violations of State Antitrust Statutes – Price Fixing and Unlawful Information Exchange
### (On Behalf of Plaintiff and Respective State Law Damages Classes)

137. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

36

CLASS ACTION COMPLAINT

138.    Beginning at least as early as March 2019, and continuing through the present, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade as to the sale of Standard Dry Shipping Containers in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

139.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators combined and conspired to among other things: (1) artificially fix, raise, stabilize, and peg prices for Standard Dry Shipping Container in unreasonable restraint of trade and commerce and in violation of the state antitrust statutes set forth below; and (2) allocate among themselves and collusively reduce the production of Standard Dry Shipping Containers.

140.    Plaintiff and members of the respective State Law Damages Classes were deprived of free and open competition and paid more for Standard Dry Shipping Containers than they would have in the absence of Defendants' unlawful conduct. This injury is the type of harm the antitrust laws of the states included herein were designed to prevent, and this injury flows from the unlawful nature of Defendants' conduct.

141.    Plaintiff and the members of the respective State Law Damages Classes in the following states seek: (1) applicable damages, including statutory damages, to be trebled or otherwise increased as permitted by certain states' antitrust laws; and (2) costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

142.    Defendants' anticompetitive conduct, as described throughout this Complaint, was knowing, willful and constitutes violations of the following state antitrust

37

CLASS ACTION COMPLAINT

statutes:

143.   **Alabama**: Defendants have entered into unlawful agreements in restraint of trade in violation of Ala. Code § 6-5-60, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Alabama; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Alabama; (3) members of the Alabama Damages Class were deprived of the benefits of free and open competition; and (4) members of the Alabama Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce. Accordingly, Plaintiff and members of the Alabama Damages Class seek all forms of relief available under Ala. Code § 6-5-60, et seq.

144.   **Arizona**: Defendants have entered into unlawful agreements in restraint of trade in violation of Ariz. Rev. Stat. § 44-1401, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Arizona; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Arizona; (3) members of the Arizona Damages Class were deprived of the benefits of free and open competition; and (4) members of the Arizona Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. Accordingly, Plaintiff and members of

38

the Arizona Damages Class seek all forms of relief available under Ariz. Rev. Stat. § 44-1401, et seq.

145. **California**: Defendants have entered into unlawful agreements in restraint of trade in violation of Cal. Bus. & Prof. Code § 16700, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout California; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout California; (3) members of the California Damages Class were deprived of the benefits of free and open competition; and (4) members of the  California Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected California commerce. Accordingly, Plaintiff and members of the California Damages Class seek all forms of relief available under Cal. Bus. & Prof. Code § 16700, et seq.

146. **Colorado**: Defendants have entered into unlawful agreements in restraint of trade in violation of Colo. Rev. Stat. § 6-4-104, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Colorado; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Colorado; (3) members of the Colorado Damages Class were deprived of the benefits of free and open competition; and (4) members of the Colorado Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal

39

CLASS ACTION COMPLAINT

conduct substantially affected Colorado commerce. Accordingly, Plaintiff and members of the Colorado Damages Class seek all forms of relief available under Colo. Rev. Stat. § 6-4-104, et seq.

147.   **Connecticut**: Defendants have entered into unlawful agreements in restraint of trade in violation of Conn. Gen. Stat. Ann. § 35-26, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Connecticut; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Connecticut; (3) members of the Connecticut Damages Class were deprived of the benefits of free and open competition; and (4) members of the Connecticut Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce. Accordingly, Plaintiff and members of the Connecticut Damages Class seek all forms of relief available under Conn. Gen. Stat. Ann. § 35-26, et seq.

148.   **Delaware**: Defendants have entered into unlawful agreements in restraint of trade in violation of Del. Code Ann. tit. 6 § 2100, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Delaware; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Delaware; (3) members of the Delaware Damages Class were deprived of the benefits of free and open competition; and (4) members of the Delaware Damages Class paid supra-competitive, artificially inflated

40

CLASS ACTION COMPLAINT

prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Delaware commerce. Accordingly, Plaintiff and members of the Delaware Damages Class seek all forms of relief available under Del. Code Ann. tit. § 2100, et seq.

149.    **District of Columbia**: Defendants have entered into unlawful agreements in restraint of trade in violation of D.C. Code  § 28-4501, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout the District of Columbia; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the District of Columbia; (3) members of the District of Columbia Damages Class were deprived of the benefits of free and open competition; and (4) members of the District of Columbia Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia. Accordingly, Plaintiff and members of the District of Columbia Damages Class seek all forms of relief available under D.C. Code § 28-4501, et seq.

150.    **Hawaii**: Defendants have entered into unlawful agreements in restraint of trade in violation of Haw. Rev. Stat. § 480-1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Hawaii; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Hawaii; (3) members of the Hawaii

41

CLASS ACTION COMPLAINT

Damages Class were deprived of the benefits of free and open competition; and (4) members of the Hawaii Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce. Accordingly, Plaintiff and members of the Hawaii Damages Class seek all forms of relief available under Haw. Rev. Stat. § 480-1, et seq.

151.    **Illinois**: Defendants have entered into unlawful agreements in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Illinois; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Illinois; (3) members of the Illinois Damages Class were deprived of the benefits of free and open competition; and (4) members of the Illinois Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. Accordingly, Plaintiff and members of the Illinois Damages Class seek all forms of relief available under 740 Ill. Comp. Stat. Ann. 10/1, et seq.

152.    **Iowa**: Defendants have entered into unlawful agreements in restraint of trade in violation of Iowa Code § 553.1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Iowa; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at

42

CLASS ACTION COMPLAINT

artificially high, non-competitive levels throughout Iowa; (3) members of the Iowa Damages Class were deprived of the benefits of free and open competition; and (4) members of the Iowa Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. Accordingly, Plaintiff and members of the Iowa Damages Class seek all forms of relief available under Iowa Code § 553.1, et seq.

153.    **Kansas**: Defendants have entered into unlawful agreements in restraint of trade in violation of Kan. Stat. Ann. § 50-101, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Kansas; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Kansas; (3) members of the Kansas Damages Class were deprived of the benefits of free and open competition; and (4) members of the Kansas Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. Accordingly, Plaintiff and members of the Kansas Damages Class seek all forms of relief available under Kan. Stat. Ann. § 50-101, et seq.

154.    **Louisiana**: Defendants have entered into unlawful agreements in restraint of trade in violation of La. Rev. Stat. tit. 51, § 121, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Louisiana; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized

CLASS ACTION COMPLAINT

at artificially high, non-competitive levels throughout Louisiana; (3) members of the Louisiana Damages Class were deprived of the benefits of free and open competition; and (4) members of the Louisiana Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Louisiana commerce. Accordingly, Plaintiff and members of the Louisiana Damages Class seek all forms of relief available under La. Rev. Stat. tit. 51, § 121, et seq.

155.   **Maine**: Defendants have entered into unlawful agreements in restraint of trade in violation of Me. Rev. Stat. Ann. tit. 10, § 1101, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Maine; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Maine; (3) members of the Maine Damages Class were deprived of the benefits of free and open competition; and (4) members of the Maine Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. Accordingly, Plaintiff and members of the Maine Damages Class seek all forms of relief available under Me. Rev. Stat. Ann. Tit. 10, § 1104, et seq.

156.   **Maryland**: Defendants have entered into unlawful agreements in restraint of trade in violation of Md. Code Ann., Com. Law § 11-201, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Maryland; (2)

44

CLASS ACTION COMPLAINT

Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Maryland; (3) members of the Maryland Damages Class were deprived of the benefits of free and open competition; and (4) members of the Mayland Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce. Accordingly, Plaintiff and members of the Maryland Damages Class seek all forms of relief available under Md. Code Ann., Com. Law § 11-201, et seq.

157.　**Michigan**: Defendants have entered into unlawful agreements in restraint of trade in violation of Mich. Comp. Laws § 445.771, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Michigan; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Michigan; (3) members of the Michigan Damages Class were deprived of the benefits of free and open competition; and (4) members of the Michigan Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. Accordingly, Plaintiff and members of the Michigan Damages Class seek all forms of relief available under Mich. Comp. Laws § 445.771, et seq.

158.　**Minnesota**: Defendants have entered into unlawful agreements in restraint of trade in violation of Minn. Stat. § 325D.49, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers

45

has been restrained, suppressed, and/or eliminated throughout Minnesota; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Minnesota; (3) members of the Minnesota Damages Class were deprived of the benefits of free and open competition; and (4) members of the Minnesota Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. Accordingly, Plaintiff and members of the Minnesota Damages Class seek all forms of relief available under Minn. Stat. § 325D.49, et seq.

159.   **Mississippi**: Defendants have entered into unlawful agreements in restraint of trade in violation of Miss. Code Ann. § 75-21-1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Mississippi; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Mississippi; (3) members of the Mississippi Damages Class were deprived of the benefits of free and open competition; and (4) members of the Mississippi Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. Accordingly, Plaintiff and members of the Mississippi Damages Class seek all forms of relief available under Miss. Code Ann. § 75-21-1, et seq.

160.   **Nebraska**: Defendants have entered into unlawful agreements in restraint of trade in violation of Neb. Rev. Stat. § 59-801, et seq. Defendants' conspiracies had the

46

following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Nebraska; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Nebraska; (3) members of the Nebraska Damages Class were deprived of the benefits of free and open competition; and (4) members of the Nebraska Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. Accordingly, Plaintiff and members of the Nebraska Damages Class seek all forms of relief available under Neb. Rev. Stat. § 59-801, et seq.

161.    **Nevada**: Defendants have entered into unlawful agreements in restraint of trade in violation of Nev. Rev. Stat. Ann. § 598A.010, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Nevada; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Nevada; (3) members of the Nevada Damages Class were deprived of the benefits of free and open competition; and (4) members of the Nevada Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. Accordingly, Plaintiff and members of the Nevada Damages Class seek all forms of relief available under Nev. Rev. Stat. Ann. § 598A.010, et seq.

162.    **New Hampshire**: Defendants have entered into unlawful agreements in

restraint of trade in violation of N.H. Rev. Stat. Ann. § 356:1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout New Hampshire; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout New Hampshire; (3) members of the New Hampshire Damages Class were deprived of the benefits of free and open competition; and (4) members of the New Hampshire Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. Accordingly, Plaintiff and members of the New Hampshire Damages Class seek all forms of relief available under N.H. Rev. Stat. Ann. § 356:1, et seq.

163.    **New Jersey**: Defendants have entered into unlawful agreements in restraint of trade in violation of N.J. Stat. Ann. § 56:9-1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout New Jersey; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout New Jersey; (3) members of the New Jersey Damages Class were deprived of the benefits of free and open competition; and (4) members of the New Jersey Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected New Jersey commerce. Accordingly, Plaintiff and members of the New Jersey Damages Class seek all forms of relief available

48

CLASS ACTION COMPLAINT

under N.J. Stat. Ann. § 56:9-1, et seq.

164.    **New Mexico**: Defendants have entered into unlawful agreements in restraint of trade in violation of N.M. Stat. Ann. § 57-1-1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout New Mexico; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout New Mexico; (3) members of the New Mexico Damages Class were deprived of the benefits of free and open competition; and (4) members of the New Mexico Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. Accordingly, Plaintiff and members of the New Mexico Damages Class seek all forms of relief available under N.M. Stat. Ann. § 57-1-1, et seq.

165.    **New York**: Defendants have entered into unlawful agreements in restraint of trade in violation of N.Y. Gen. Bus. Law § 340, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout New York; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout New York; (3) members of the New York Damages Class were deprived of the benefits of free and open competition; and (4) members of the New York Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. Accordingly, Plaintiff and members

49

of the New York Damages Class seek all forms of relief available under N.Y. Gen. Bus. Law § 340, et seq.

166. **North Carolina**: Defendants have entered into unlawful agreements in restraint of trade in violation of N.C. Gen. Stat. § 75-1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout North Carolina; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout North Carolina; (3) members of the North Carolina Damages Class were deprived of the benefits of free and open competition; and (4) members of the North Carolina Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. Accordingly, Plaintiff and members of the North Carolina Damages Class seek all forms of relief available under N.C. Gen. Stat. § 75-1, et seq.

167. **North Dakota**: Defendants have entered into unlawful agreements in restraint of trade in violation of N.D. Cent. Code § 51-08.1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout North Dakota; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout North Dakota; (3) members of the North Dakota Damages Class were deprived of the benefits of free and open competition; and (4) members of the North Dakota Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers.

50

CLASS ACTION COMPLAINT

During the Class Period, Defendants' illegal conduct substantially affected North Dakota commerce. Accordingly, Plaintiff and members of the North Dakota Damages Class seek all forms of relief available under N.D. Cent. Code § 51-08.1, et seq.

168.   **Oregon**: Defendants have entered into unlawful agreements in restraint of trade in violation of Or. Rev. Stat. § 646.725, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Oregon; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Oregon; (3) members of the Oregon Damages Class were deprived of the benefits of free and open competition; and (4) members of the Oregon Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Oregon commerce. Accordingly, Plaintiff and members of the Oregon Damages Class seek all forms of relief available under Or. Rev. Stat. § 646.780, et seq.

169.   **Puerto Rico**: Defendants have entered into unlawful agreements in restraint of trade in violation of P.R. Laws Ann. tit. 10 § 258, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Puerto Rico; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Puerto Rico; (3) members of the Puerto Rico Damages Class were deprived of the benefits of free and open competition; and (4) members of the Puerto Rico Damages Class paid supra-competitive,

51

CLASS ACTION COMPLAINT

artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Puerto Rico commerce. Accordingly, Plaintiff and members of the Puerto Rico Damages Class seek all forms of relief available under P.R. Laws Ann. tit. 10 § 258, et seq.

170.    **Rhode Island**: Defendants have entered into unlawful agreements in restraint of trade in violation of R.I. Gen. Laws § 6-36-4, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Rhode Island; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Rhode Island; (3) members of the Rhode Island Damages Class were deprived of the benefits of free and open competition; and (4) members of the Rhode Island Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Rhode Island commerce. Accordingly, Plaintiff and members of the Rhode Island Damages Class seek all forms of relief available under R.I. Gen. Laws § 6-36-11, et seq.

171.    **South Dakota**: Defendants have entered into unlawful agreements in restraint of trade in violation of S.D. Codified Laws § 37-1-3.1, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout South Dakota; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout South Dakota; (3) members of the South Dakota Damages Class were deprived of the benefits of

52

CLASS ACTION COMPLAINT

free and open competition; and (4) members of the South Dakota Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected South Dakota commerce. Accordingly, Plaintiff and members of the South Dakota Damages Class seek all forms of relief available under S.D. Codified Laws § 37-1-3.1, et seq.

172.    **Tennessee**: Defendants have entered into unlawful agreements in restraint of trade in violation of Tenn. Code Ann. § 47-25-101, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Tennessee; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Tennessee; (3) members of the Tennessee Damages Class were deprived of the benefits of free and open competition; and (4) members of the Tennessee Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Tennessee commerce. Accordingly, Plaintiff and members of the Tennessee Damages Class seek all forms of relief available under Tenn. Code Ann. § 47-25-101, et seq.

173.    **Utah**: Defendants have entered into unlawful agreements in restraint of trade in violation of Utah Code Ann. § 76-16-5, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Utah; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Utah; (3) members of the Utah

53

Damages Class were deprived of the benefits of free and open competition; and (4) members of the Utah Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Utah commerce. Accordingly, Plaintiff and members of the Utah Damages Class seek all forms of relief available under Utah Code Ann. § 76-16-5, et seq.

174.    **Vermont**: Defendants have entered into unlawful agreements in restraint of trade in violation of 9 Vt. Stat. Ann. § 2453, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Vermont; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Vermont; (3) members of the Vermont Damages Class were deprived of the benefits of free and open competition; and (4) members of the Vermont Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Vermont commerce. Accordingly, Plaintiff and members of the Vermont Damages Class seek all forms of relief available under 9 Vt. Stat. Ann. § 2465, et seq.

175.    **West Virginia**: Defendants have entered into unlawful agreements in restraint of trade in violation of W. Va. Code § 47-18-3, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout West Virginia; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout West

54

Virginia; (3) members of the West Virginia Damages Class were deprived of the benefits of free and open competition; and (4) members of the West Virginia Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected West Virginia commerce. Accordingly, Plaintiff and members of the West Virginia Damages Class seek all forms of relief available under W. Va. Code § 47-18-9, et seq.

176.    **Wisconsin**: Defendants have entered into unlawful agreements in restraint of trade in violation of Wis. Stat. Ann. § 133.01, et seq. Defendants' conspiracies had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated throughout Wisconsin; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout Wisconsin; (3) members of the Wisconsin Damages Class were deprived of the benefits of free and open competition; and (4) members of the Wisconsin Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Wisconsin commerce. Accordingly, Plaintiff and members of the Wisconsin Damages Class seek all forms of relief available under Wis. Stat. Ann. § 133.01, et seq.

### THIRD CLAIM FOR RELIEF
### Violations of State Consumer Protection Statutes – Price Fixing and Unlawful Information Exchange
### (On Behalf of Plaintiff and Respective State Law Damages Classes)

177.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

55

CLASS ACTION COMPLAINT

178.    Beginning at least as early as March 2019, and continuing through the present, Defendants engaged in unfair competition or unfair, or unconscionable acts or practices as to the sale of Standard Dry Shipping Containers in violation of the state consumer protection and unfair competition statutes listed below.

179.    As a direct and proximate result of Defendants' unlawful conduct and anticompetitive acts described herein, Plaintiff and members of the respective State Law Damages Class were injured and are threatened with further injury due to Defendants' violations of the following state consumer protection statutes.

180.    **California**: In violation of Cal. Bus. & Prof. Code §§ 17200, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in California; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout California; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the California Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in California, Plaintiff and members of the California Damages Class seek all forms of available relief under Cal. Bus. & Prof. Code §§ 17200, et seq.

181.    **Florida**: In violation of Florida Deceptive and Unfair Trade Practices Act,

CLASS ACTION COMPLAINT

Fla. Stat. §§ 501.201, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Florida; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Florida; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Florida Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Florida, Plaintiff and members of the Florida Damages Class seek all forms of available relief under Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq.

182.    **Hawaii**: In violation of Haw. Rev. Stat. § 480-2, Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Hawaii; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Hawaii; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Hawaii Damages Class paid artificially

CLASS ACTION COMPLAINT

inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Hawaii, Plaintiff and members of the Hawaii Damages Class seek all forms of available relief under Haw. Rev. Stat. § 480-2.

183.    **Idaho**: In violation of Idaho Code Ann. §§ 48-601, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Idaho; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Idaho; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Idaho Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Idaho, Plaintiff and members of the Idaho Damages Class seek all forms of available relief under Idaho Code Ann. §§ 48-601, et seq.

184.    **Illinois**: In violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/10a, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Illinois; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-

58

competitive prices throughout Illinois; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Illinois Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Illinois, Plaintiff and members of the Illinois Damages Class seek all forms of available relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/10a, et seq.

185.    **Indiana**: In violation of Ind. Code §§ 24-5-0.5-3, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Indiana; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Indiana; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Indiana Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Indiana, Plaintiff and members of the Indiana Damages Class seek all forms of available relief under Ind. Code §§ 24-5-0.5-3, et seq.

186.    **Massachusetts**: In violation of Massachusetts Consumer Protection Act,

59

CLASS ACTION COMPLAINT

Mass. Gen. Laws Ann. Ch. 93A, §1, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Massachusetts; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Massachusetts; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Massachusetts Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Massachusetts, Plaintiff and members of the Massachusetts Damages Class seek all forms of available relief under Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A, §1, et seq.

187. **Minnesota**: In violation of the Minnesota Consumer Protection Act, Minn. Stat. § 325F.69, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Minnesota; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Minnesota; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members

60

CLASS ACTION COMPLAINT

of the Minnesota Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Minnesota, Plaintiff and members of the Minnesota Damages Class seek all forms of available relief under Minnesota Consumer Protection Act, Minn. Stat. § 325F.69, et seq.

188.    **Missouri**: In violation of Mo. Rev. Stat. §§ 407.010, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Missouri; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Missouri; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Missouri Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Missouri, Plaintiff and members of the Missouri Damages Class seek all forms of available relief under Mo. Rev. Stat. §§ 407.010, et seq.

189.    **Montana**: In violation of Mont. Code §§ 30-14-101, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Montana; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at

61

artificially high, non-competitive prices throughout Montana; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Montana Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Montana, Plaintiff and members of the Montana Damages Class seek all forms of available relief under Mont. Code §§ 30-14-101, et seq.

190.    **Nebraska**: In violation of Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Nebraska; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Nebraska; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Nebraska Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Nebraska, Plaintiff and members of the Nebraska Damages Class seek all forms of available relief under the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, et seq.

191. **Nevada**: In violation of the Nevada Deceptive Trade Practices Act. Nev. Stat. § 598.0923, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Nevada; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Nevada; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Nevada Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Nevada, Plaintiff and members of the Nevada Damages Class seek all forms of available relief under the Nevada Deceptive Trade Practices Act. Nev. Stat. § 598.0923, et seq.

192. **New Jersey**: In violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in New Jersey; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout New Jersey; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members

63

CLASS ACTION COMPLAINT

of the New Jersey Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in New Jersey, Plaintiff and members of the New Jersey Damages Class seek all forms of available relief under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, et seq.

193.    **New Mexico**: In violation of New Mexico Stat. §§ 57-12-1, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in New Mexico; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout New Mexico; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the New Mexico Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in New Mexico, Plaintiff and members of the New Mexico Damages Class seek all forms of available relief under New Mexico Stat. §§ 57-12-1, et seq.

194.    **North Carolina**: In violation of N.C. Gen. Stat. §§ 75-1.1, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in North Carolina; (2)

64

CLASS ACTION COMPLAINT

Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout North Carolina; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the North Carolina Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in North Carolina, Plaintiff and members of the North Carolina Damages Class seek all forms of available relief under N.C. Gen. Stat. §§ 75-1.1, et seq.

195.    **Pennsylvania**: In violation of 73 Pa. Stat. Ann. §§ 201-1, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Pennsylvania; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Pennsylvania; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Pennsylvania Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Pennsylvania, Plaintiff and members of the Pennsylvania Damages Class seek all forms of available relief under 73 Pa. Stat.

65

Ann. §§ 201-1, et seq.

196. **Rhode Island**: In violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act. R.I. Gen. Laws §§ 6-13.1-1, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Rhode Island; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Rhode Island; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Rhode Island Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Rhode Island, Plaintiff and members of the Rhode Island Damages Class seek all forms of available relief under Rhode Island Unfair Trade Practice and Consumer Protection Act. R.I. Gen. Laws §§ 6-13.1-1, et seq.

197. **South Carolina**: In violation of S.C. Code Ann. §§ 39-5-20, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in South Carolina; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout South Carolina; (3) individuals or entities who purchased Standard Dry Shipping

66

Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the South Carolina Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in South Carolina, Plaintiff and members of the South Carolina Damages Class seek all forms of available relief under S.C. Code Ann. §§ 39-5-20, et seq.

198. **Vermont**: In violation of 9 Vermont Stat. Ann. §§ 2451, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Vermont; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Vermont; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Vermont Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Vermont, Plaintiff and members of the Vermont Damages Class seek all forms of available relief under 9 Vermont Stat. Ann. §§ 2451, et seq.

199. **Virginia**: In violation of Va. Code Ann. §§ 59.1-196, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the

67

CLASS ACTION COMPLAINT

following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in Virginia; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout Virginia; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the Virginia Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period significantly and substantially impacted commerce in Virginia, Plaintiff and members of the Virginia Damages Class seek all forms of available relief under Va. Code Ann. §§ 59.1-196, et seq.

200.    **West Virginia**: In violation of the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-6-101, et seq., Defendants engaged in unfair competition and unfair and unlawful acts or practices and has had the following effects: (1) price competition in the sale of Standard Dry Shipping Containers has been restrained, suppressed, and/or eliminated in West Virginia; (2) Standard Dry Shipping Containers sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive prices throughout West Virginia; (3) individuals or entities who purchased Standard Dry Shipping Containers indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition; and (4) Plaintiff and members of the West Virginia Damages Class paid artificially inflated, supra-competitive prices for Standard Dry Shipping Containers. Therefore, because of Defendants' unfair and unlawful conduct during the Class Period

68

CLASS ACTION COMPLAINT

significantly and substantially impacted commerce in West Virginia, Plaintiff and members of the West Virginia Damages Class seek all forms of available relief under the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-6-101, et seq.

**FOURTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and Respective State Law Damages Classes)**

201.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

202.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits on sales of Standard Dry Shipping Containers.

203.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred on them by overpayments by Plaintiff and Class Members in the following states: Alabama, Arkansas, Arizona, California, Connecticut, District of Columbia, Florida, Hawaii,  Illinois, Iowa, Kansas, Louisiana, Maine, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

**XI.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Classes of all others so similarly situated, respectfully requests judgment against Defendants as follows:

CLASS ACTION COMPLAINT

A.     The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative and its counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Classes, once certified;

B.     The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed in violation of Section 1 of the Sherman Act and listed state antitrust laws, unfair competition laws, state consumer protection laws, and common law;

C.     Plaintiff and the Classes recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgment in favor of Plaintiff and the members of the Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

E.     Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly

70

sensitive competitive information that permits individual identification of company's information;

F.      Plaintiff and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

G.      Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

H.      Plaintiff and the members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## XII.    **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, hereby requests a jury trial pursuant to Federal Rule of Civil Procedure 38(b) on any and all claims so triable.

DATED: June 26, 2026                    Respectfully submitted,


                                        */s/ Dennis Stewart*
                                        Dennis Stewart (SBN 99152)
                                        **GUSTAFSON GLUEK PLLC**
                                        600 W. Broadway, Suite 3300
                                        San Diego, CA 92101
                                        Telephone: (619) 595-3299
                                        dstewart@gustafsongluek.com


                                        Daniel E. Gustafson (*pro hac vice forthcoming*)
                                        Daniel C. Hedlund (*pro hac vice forthcoming*)
                                        Joshua J. Rissman (*pro hac vice forthcoming*)
                                        Emily B. Egart (*pro hac vice forthcoming*)
                                        Adam J. Kolb (*pro hac vice forthcoming*)
                                        **GUSTAFSON GLUEK PLLC**
                                        Canadian Pacific Plaza
                                        120 South 6th Street, Suite 2600

71

Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
jrissman@gustafsongluek.com
eegart@gustafsongluek.com
akolb@gustafsongluek.com

Robert J. Gralewski, Jr., (CA Bar No. 196410)
Marko Radisavljevic, (CA Bar No. 306552)
**KIRBY McINERNEY LLP**
1420 Kettner Blvd., Suite 100
San Diego, California 92101
Telephone: (858) 834-2044
bgralewski@kmllp.com
mradisavljevic@kmllp.com

Mario N. Alioto (SBN 56433)
Lauren C. Capurro (SBN 241151)
**TRUMP, ALIOTO, TRUMP & PRESCOTT LLP**
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
malioto@tatp.com
laurenrussell@tatp.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT